# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24492-CV-WILLIAMS/TORRES

JULIA UNDERWOOD,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO STRIKE

Before the Court is a Motion to Strike or Exclude Certain Testimony and Opinions of Dr. Jayme Gawith, D.C., Plaintiff's treating physician and medical expert, filed by Defendant NCL (BAHAMAS) LTD. ("Norwegian" or "Defendant") on January 4, 2019. [D.E. 34]. Plaintiff JULIA UNDERWOOD ("Underwood" or "Plaintiff") filed her Response in Opposition to the Motion on January 20, 2019 [D.E. 40], and Norwegian's Reply followed on February 8. [D.E. 45]. The matter is now fully-briefed and therefore ripe for disposition. Following our review of the record, the parties' briefing materials and the governing legal authorities, we hereby find that the Motion should be **GRANTED in part** and **DENIED in part.**

## *I.* *FACTUAL BACKGROUND*

The incident giving rise to the Complaint took place on December 19, 2016 aboard the Norwegian *Jade*. [D.E. 1]. According to the Complaint, Plaintiff slipped

and fell on Deck 13 of the vessel, nearby the Bali Hai Bar, after stepping in water that had been leaking from the bar's self-serve water station. Plaintiff alleges that she suffered a compression fracture at the eleventh thoracic vertebrae due to the fall.

The dispute before us centers on the testimony to be offered by Dr. Jayme Gawith, a chiropractor who allegedly treated Plaintiff for certain injuries after the subject cruise. Plaintiff summarized the testimony to be offered by Dr. Gawith in an expert witness disclosure sent to Norwegian on September 19, 2018:

> Dr. Gawith will testify that Julia Underwood sustained a moderate superior compression fracture at T11, acute to subacute, a result of the December 19, 2016 injury aboard the NCL Jade, for which he treated with chiropractic manipulation and opined that her prognosis was unknown. Dr. Gawith will also testify to Julia Underwood's physical restrictions as a result of this injury, as well as the fact that the medical bills are reasonable, necessary, and related to the injury of December 19, 2016.[1]
>
> …
>
> Dr. Gawith will testify consistent with Julia Underwood's medical records and her history, including opinions he developed during his treatment of Julia Underwood. Dr. Gawith's testimony will be based on scientific, technical, or other specialized knowledge and will be derived from professional experience.

D.E. 34-1, p. 49.

---

[1] The disclosure also indicated Dr. Gawith would testify about how the incident giving rise to the Complaint aggravated pre-existing knee injuries to Plaintiff's medial meniscus. In his deposition, however, Dr. Gawith stated he had not treated Plaintiff for any knee injury, and that he would not be offering opinions at trial concerning the pre-existing condition of her knee. [D.E. 34-2, p. 14]. Based on this representation, any attempt to trace the alleged incident to any purported aggravation of a knee injury through Dr. Gawith's testimony should be precluded.

2

The parties took Dr. Gawith's deposition on December 14, 2018. [D.E. 34-2]. Dr. Gawith referred to himself as one of Plaintiff's treating medical providers and indicated he had not been paid to provide an opinion in this case. *Id.*, p. 4.[2] He was unaware he had been listed on Plaintiff's expert disclosure list. *Id.* at 14. At several points during his deposition, Dr. Gawith indicated he believes the incident giving rise to the Complaint caused Plaintiff's injuries, and that she will require future care as a result.

Defendant now challenges the testimony to be offered by Dr. Gawith at trial, arguing that he cannot opine on causation because he never provided an expert report and is unqualified to render opinions as to Plaintiff's need for future surgeries. As discussed in detail below, we agree with the first argument, but not with the second, and so the Motion will be granted in part and denied in part.

## II. ANALYSIS

### A. *Dr. Gawith Should Not Be Allowed to Opine as to Causation*

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs. That Rule states:

(A) In General. In addition to disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

---

[2]  Q: And doctor, you are not paid in this case to provide me, or anyone with an opinion with regard to Julia Underwood, is that right?

   **A: That's right.**

[D.E. 34-1, p. 4].

3

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).[3]

Determining whether a treating physician must provide an expert report in accordance with Rule 26(a)(2)(B) can be a tricky issue. As stated by the Eleventh Circuit:

> The testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court. Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and

---

[3] The issue commonly arises in cruise line cases. *See generally Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 4539706, at *8-9 (S.D. Fla. Sept. 21, 2018) (cruise line moved to exclude plaintiff's treating physician from offering opinions on causation and future care because no expert report had been submitted by plaintiff during discovery); *Milbrath v. NCL Bahamas, Ltd.*, 2018 WL 2036081, at *1 (S.D. Fla. Feb. 28, 2018); *O'Brien v. NCL (Bahamas) Ltd.*, 2017 WL 8315925, at *3 (S.D. Fla. Aug. 25, 2017).

4

> purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience. When such a situation presents itself, the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony. As we pointed out in *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2015), distinguishing between lay and expert testimony is an important one; arriving at an appropriate conclusion requires that trial courts to be vigilant in ensuring that the reliability requirements set forth in Rule 702 not " 'be evaded through the simple expedient of proffering an expert in lay witness clothing.' " *Id.* at 1300 (quoting Fed. R. Evid. 701 advisory committee notes to the 2000 amendment).

*Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316-17 (11th Cir. 2011). While lay witnesses may testify about their own immediate perceptions, "testimony that blurs into supposition and extrapolation crosses the line into expertise." *Lebron v. Secretary of Fla. Dept. of Children and Families*, 772 F.3d 1352, 1372 (11th Cir. 2014); *see also Ortega-Guzman v. Sam's East, Inc.*, 2018 WL 6308708, at *2 (S.D. Fla. Oct. 31, 2018) ("Expert witnesses may hypothesize; lay witnesses may not.").

The doctor's own testimony, in addition to Plaintiff listing Gawith as an "expert witness," makes clear that Underwood intends to introduce Dr. Gawith to testify on what caused Plaintiff's injuries. When causation opinions are "formed and based upon observations made during the course of treatment," the treating physician need not produce a Rule 26(a)(2)(B) report. *In re Denture Cream Products Liability Litig.*, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (internal citations and quotations omitted). "By contrast, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *Id*.

Here, a Rule 26(a)(2)(B) report was necessary because the doctor's causation opinions could not have been "formed and based upon observations made during the

course of treatment." *Id*. This finding is supported by the large gap in time that existed between the incident and Plaintiff's first treatment with Dr. Gawith, which took place sixteen months after the fall on the *Jade*. [D.E. 34-2, p. 5]. It would be impossible for the doctor – who admitted he had no treatment history with Plaintiff before their first appointment in 2018 – to diagnose the compression fracture based on observations made during his treatment with Plaintiff, because he had no history that would place her injuries (or her pre-incident status) into a post-incident context. Indeed, such a large gap of time would make it impossible for the doctor to determine whether the incident aboard the vessel, rather than some other intervening event, caused the injuries Underwood complains of here.

Dr. Gawith's opinion as to causation is more appropriately termed a hypothetical theory, rather than a determination he made for purposes of treating Underwood's injuries. *See Wilson*, 303 F. App'x at 712-13 ("Testimony regarding [the] diagnosis of the injury itself…would be permissible as lay testimony without the *Daubert* analysis, but [the] statement about the cause of the injury was a hypothesis."); *cf. Bodden v. Quigley*, 2014 WL 5461807, at *2 n.2 (S.D. Fla. Oct. 27, 2014) (treating physician may offer lay opinion as to causation if doing so helps explain the doctor's decision-making process to the jury and whether cause of injury was necessary for doctor to properly treat patient). "And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (holding that treating physician provided expert testimony where she expressed an opinion on

6

causation where the determination of the cause of the injury did not aid in the treatment thereof).

Under these circumstances, we find that Plaintiff needed to provide Defendant with a written expert report if she intended to elicit causation testimony from Dr. Gawith. She failed to do so, and for this reason, any causation testimony from the doctor – whether he testifies in-person or through the reading of his deposition – should be stricken as inadmissible. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 27(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]").

### B. *Dr. Gawith May Testify About the Kyphoplasty Procedure*

We will deny the Motion based on the second argument raised by Norwegian. Defendant contends that Dr. Gawith should not be allowed to offer testimony concerning a specific surgical procedure, known as a "kyphoplasty," that is commonly used to treat compression fractures. Plaintiff alleges she has been recommended for such a procedure, and Norwegian asks that we prevent Dr. Gawith from testifying about that surgery because he is not qualified to give expert opinions on the procedure or how "Plaintiff may or may not fare" if it is performed. We disagree.

As an initial matter, *Daubert*'s "qualification" standard for expert testimony "is not stringent," and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowner's Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D.

7

Fla. 2009). Any shortcomings as to Gawith's qualifications to testify on certain medical issues can easily be exposed at trial through vigorous cross-examination, which will allow the jury to decide whether his testimony should be relied upon – whether in whole, in part, or at all. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *United States v. Williams*, 865 F.3d 1328, 1340 (11th Cir. 2017) ("The district court acted within its discretion in determining that…any quarrels with [the expert's] qualifications were fodder for cross examination rather than reason to exclude his testimony altogether."); *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) (noting that deficits in the qualifications of an expert can be evaluated critically on cross examination because they go to the weight of the testimony).

Further, while scientific training and education may provide possible means to qualify an expert, experience in a field may offer another path to expert status. *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). The doctor's own testimony reflects our view that the doctor will not be opining on Plaintiff's *need* for a kyphoplasty – which has been recommended by her spinal surgeon – but rather his experience in treating patients who have undergone the procedure. [D.E. 34-2, pp.

10-aa]. He is qualified to offer such opinions, so long as it is limited to the chiropractic context.[4]

### III. CONCLUSION

For these reasons, Defendant's Motion is **GRANTED in part** and **DENIED in part**. Dr. Gawith is precluded from testifying as to the cause of Plaintiff's compression fractures, but Underwood may elicit testimony concerning his experience with the kyphoplasty procedure and the relative success he has had with patients who have undergone that surgery.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 10th day of April, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[4] Although it does not appear that Plaintiff intends to do so, she is precluded from using the testimony of Dr. Gawith to argue the necessity of the procedure or any recommendation for same. Instead, and as shown by his deposition, he may offer opinions concerning what he understands the procedure to be, who it is appropriate for, and how it has affected patients of his in the past.